UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| DOUGLAS F. TULLOS, # 137990, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:12-cv-144 |
| ) | |
| v. ) | Honorable Paul L. Maloney |
| ) | |
| CRAIG HUTCHINSON, M.D., et al., ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendants. ) | |
| _____) | |

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. On February 16, 2012, plaintiff filed his complaint naming Jeffrey Stieve, M.D., Craig Hutchinson, M.D., and Nurse Practitioner Ray Ingraham as defendants. Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. Specifically, plaintiff alleges that he has not been approved for a second round of treatment of his Hepatitis C with drugs that received FDA approval in May 2011. He alleges that defendant Ingraham was deliberately indifferent to his serious medical needs when he told plaintiff "that the new drugs, recently approved by the FDA, wouldn't be available for at least a year or longer" and in May 2010, when he canceled an ultrasound examination of plaintiff's liver. (Compl. ¶ 50). Plaintiff alleges that Dr. Hutchinson violated his Eighth Amendment rights by not approving him for a second round of treatment with the new drugs. (*Id.* at ¶ 51). He alleges that Dr. Steive violated his Eighth Amendment rights "by denying or delaying Plaintiff's treatment after being made aware of his deteriorating conditions by the Ombudsman's Office and by having policies and procedures

in place restricting [H]epatitis C treatment." (*Id.* at ¶ 52). Plaintiff sues defendants in their individual and official capacities and seeks damages, declaratory relief, and an injunction compelling defendants to treat him with the new drugs. (*Id.* at 12).

The matter is before the court on cross-motions for summary judgment. For the reasons set forth herein, I recommend that defendant Stieve's motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a) (docket # 12) be granted and that all plaintiff's claims against Dr. Stieve be dismissed without prejudice. I further recommend that plaintiff's motion for summary judgment (docket # 39) be denied. I further recommend that the motion for summary judgment by defendants Hutchinson and Ingraham (docket # 46) be granted and that judgment be entered in their favor on all plaintiff's claims.

## **Applicable Standards**

### A. **Summary Judgment Standard**

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Group*, 415 F.3d 487, 493 (6th Cir. 2005). "'[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.'" *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005)(quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Gecewicz v. Henry Ford Hosp. Corp.*, 683 F.3d 316, 321 (6th Cir. 2012).

The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wasek v. Arrow Energy Services, Inc.*, 682 F.3d 463, 467 (6th Cir. 2012).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Rule 56(c)(1). FED. R. CIV. P. 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e)(2), (3); *see Coleman v. Bowerman*, 474 F. App'x 435, 436 (6th Cir. 2012). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Donald v. Sybra, Inc.*, 667 F.3d 757, 760-61 (6th Cir. 2012).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036,

1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). This higher standard applies to plaintiff's motion for summary judgment and defendant Stieve's motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a).

  **B.**  **Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies**

  Defendant Stieve has asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v.*

*Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus,

when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90–93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir.2011); see 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[1] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where,

---

[1] Copies of the policy directive are found in the record. *See* docket # 13-1, ID# s 63-69; docket # 18-1, ID#s 118-21.

why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept.30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent for grievances regarding health care issues is the Regional Health Administrator or the Administrator's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. The Grievance and Appeals Section forwards grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). The BHCS Administrator is required to ensure that the grievance is investigated and a

response provided to the Grievance and Appeals Section in a timely manner. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC).[2] Jeffrey Stieve, M.D., is the Chief

---

[2]Plaintiff's complaint is verified under penalty of perjury. It is considered as an affidavit in opposition to defendants' motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992). However, "verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *see also Stine*

Medical Officer of the Michigan Department of Corrections (MDOC). Craig Hutchinson, M.D., and Nurse Practitioner Ray Ingraham are employees of Corizon Health, Inc., formerly known as Prison Health Services, Inc. (Compl. ¶¶ G-J, docket # 1, ID# 4; docket # 63-3, ID#s 580, 585).

Plaintiff has Hepatitis C. He received the standard Hepatitis C treatment of pegylated interferon and ribavirin for a 48-week period ending in October 2007. (Compl. ¶¶ 9, 10; Plf. Decl. ¶ 6, docket # 40, ID#s 258-59). "As occurs in over 50% of patients with Mr. Tullos' form of Hepatitis C, the standard dual therapy of pegylated interferon and ribavirin was not successful. When standard dual therapy fails, there are limited options for treatment." (docket # 24-2, Hutchinson Decl. ¶¶ 1-4, ID#s 179-81). "When the therapy fails, the patient's liver enzymes will increase." (Hutchinson Decl. ¶ 17, docket # 46-4, ID# 370). Until very recently, there was no medically recommended treatment for a patient's HCV infection in a case where interferon-ribavirin therapy has failed. (*Id.*).

Plaintiff may or may not be a candidate for a new "Triple Therapy" treatment protocol which is still in the developmental stages. In May 2011, the Food and Drug Administration (FDA) approved new antiviral agents Boceprevir (Victrelis) and Telaprevir (Incivek) for treatment of chronic Hepatitis C virus infection, genotype 1. (Compl. ¶ 39; Plf. Decl. ¶ 16, docket # 40; Hutchinson Decl. ¶¶ 5-6, ID# 181).

A year earlier, on May 21, 2010, Dr. Burns ordered a liver ultrasound. Plaintiff states that on May 27, 2010, defendant Ingraham indicated that he did not need an ultrasound because it was an expensive procedure and it would not reveal any new information. (docket # 48-2, ID# 425;

---

*v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment.").

Pltf. Decl. ¶ 11, docket # 40, ID# 260). The medical records show that plaintiff received the ultrasound test on his liver in the normal course of treatment on May 25, 2012. The test results were unremarkable and did not reveal any unknown abnormalities in plaintiff's liver. (Hutchinson Decl. ¶¶ 15, 16, docket # 46-4, ID#s 369-70). Defendant Ingraham saw plaintiff for the first time on May 27, 2010, to discuss the status of his disease and the results of lab tests performed two days earlier. He did not schedule or cancel plaintiff's ultrasound. (Ingraham Decl. ¶ 7, docket # 46-5, ID# 375).

On October 11, 2011, plaintiff received a clinical progress note from Nurse Practitioner Ingraham stating that "the State of Michigan does not allow experimentation on prisoners . . . [and that] the new medications for HCV [would] not be available for at least one year and more likely longer." (docket # 48-1, ID# 397; Ingraham Decl. ¶ 10, docket # 46-5, ID#s 375-76; Compl. ¶ 45).

On February 12, 2012, plaintiff filed this lawsuit. In March 2012, the Federal Bureau of Prisons (BOP) issued revised clinical guidelines for the newly approved drugs. The clinical guidelines indicate that when the new agents are used in conjunction with pegylated interferon and ribavirin in "Triple Therapy," the combination achieves significantly better sustained viral response than the standard dual therapy. In July 2012, the MDOC was in the process of developing procedures for the introduction of Triple Therapy based on the BOP's revised guidelines. It was expected that an appropriate treatment protocol would be in place in the near future. (Hutchinson Decl. ¶¶ 5-7, docket # 24-2, ID# 181).

On July 16, 2012, plaintiff filed a motion for a preliminary injunction. (docket # 23). Plaintiff sought an order compelling defendants to provide him "with some type of interim or some level of maintenance treatment" – that is, less than a full treatment program, but enough treatment

so that [p]laintiff's Hepatitis C would not progress further." (10/11/12 Order at 2-3, docket # 44, ID#s 333-34). On August 9, 2012, I entered a report and recommendation recommending that plaintiff's motion be denied. Among other things, I noted that the medical evidence showed that the new Triple Therapy under development had serious side effects and that it would not be advisable for all Hepatitis C patients:

> The Triple Therapy treatment has serious side effects and limited benefit for certain patients." (Hutchinson Decl. ¶ 8). Once the format for introduction of Triple Therapy for treatment of Hepatitis C is approved and introduced, MDOC inmates who would benefit from the treatment will be evaluated and assessed for treatment. "It is important to note that Triple Therapy will not be advisable for all Hepatitis C patients in that there are multiple side effects, including potential drug resistance to anti-virals. The MDOC will be selective in determining who should receive the new Triple Therapy and will recommend carefully explaining to each patient the side effects of treatment." (*Id.*, ¶ 9).

(Report and Recommendation at 2-3, docket # 26, ID#s 189-90). On October 11, 2012, Chief Judge Maloney adopted the report and recommendation and denied plaintiff's motion for a preliminary injunction. He noted that there was no medically recommended interim or maintenance-type treatment available to plaintiff. (10/11/12 Order at 2-3, docket # 44, ID#s 333-34).

The most recent update regarding the MDOC's progress in implementing the new form of therapy plaintiff desires is dated October 18, 2012. (Hutchinson Decl., docket # 46-4, ID#s 365-71). The MDOC has finalized approval of Triple Therapy for certain types of HCV infections in accordance with the guidelines proposed by the Federal Bureau of Prisons. At present, the MDOC's Chief Medical Officer is reviewing potential candidates for Triple Therapy treatment of Hepatitis C. The most urgent cases, based on liver performance, will start Triple Therapy in the next few months. Liver performance, as measured by laboratory tests, is the primary method of establishing candidacy and priority for Triple Therapy. (Hutchinson Decl. ¶¶ 2-3, docket # 46-4, ID# 366).

Plaintiff will be evaluated on the same basis as other MDOC inmates suffering from Hepatitis C who are candidates for Triple Therapy. (Hutchinson Decl. ¶ 4, docket # 46-4, ID#s 366-67). Plaintiff is a candidate for the new therapy. Dr. Hutchinson states:

> Based on my current clinical evaluation of his liver performance as reflected in recent laboratory tests, Mr. Tullos is a candidate for consideration of [T]riple [T]herapy. As explained to Mr. Tullos on multiple occasions, the process for approving a new drug regimen is thorough and time-consuming. The new therapy had to be approved by the U.S. Food and Drug Administration, recommended by the Federal Bureau of Prisons and then approved by the MDOC. Only then could the MDOC begin treatment under the new clinical guidelines.

(Hutchinson Decl. ¶ 4, docket # 46-4, ID#s 366-67).

Plaintiff's Hepatitis C is being medically evaluated and monitored. The medical professionals agree that plaintiff is and has been treated in accordance with prescribed medical guidelines for treating his disease. (Hutchinson Decl. ¶¶ 1, 19 docket # 46-4, ID#s 365, 371; Ingraham Decl. ¶¶ 2, 14, docket # 46-5, ID#s 373-74, 376-77).

Defendant Stieve is not named in plaintiff's grievances. (docket #s 13-2, 13-3, 13-4, 13-5, 13-6, ID#s 71-98; docket #s 18-1, 18-2, 18-3, ID#s 123-35). Plaintiff did not pursue any grievance against Stieve through a Step III decision.

**Discussion**

**I.     Exhaustion**

Defendant Stieve has raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against him as required by 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220.

Plaintiff argues that he exhausted his available administrative remedies because Grievance Numbers LCF 2010-10-2207-11a (docket # 18-1, ID#s 123-24) and LCF 2011-10-1098-12f (docket # 18-2, ID#s 126-30) were denied on the merits rather than on procedural grounds. (Plf. Brief at 1-6, docket # 18). Dr. Stieve is not mentioned in plaintiff's grievances and there are no facts alleged in the grievances corresponding to plaintiff's claims against Dr. Stieve. Plaintiff did not exhaust his administrative remedies on any claim against Dr. Stieve.

Plaintiff argues that nothing in 42 U.S.C. § 1997e(a) imposes a requirement that he name all defendants. (Plf. Brief at 7). Plaintiff is correct that the statute itself is not the source of this requirement. *See Jones v. Bock*, 549 U.S. at 217. The requirement is established by Michigan's procedural rules, in this instance, MDOC Policy Directive 03.02.130 (effective July 9, 2007). *See Woodford v. Ngo*, 548 at 88; *see also Jones v. Bock*, 549 U.S. at 218. In order to properly exhaust a claim, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. The Sixth Circuit has repeatedly held that under the above-referenced policy directive, a prisoner must name each individual in his grievance. The Court of Appeals consistently affirms the dismissal of claims where a prisoner fails to satisfy this requirement. *See e.g.*, *Peterson v. Cooper*, 463 F. App'x 528, 530 (6th Cir. 2012); *Hall v. Warren*, 443 F. App'x 99, (6th Cir. 2011); *Sullivan v. Kasajaru*, 316 F. App'x at 470.

The only remaining question is whether the dismissal of plaintiff's claims against Dr. Stieve should be with or without prejudice. Generally, the dismissal of claims for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a) is without prejudice. *See Bell v.*

*Konteh*, 450 F.3d 651, 654 (6th Cir. 2006). Defendant has not presented any developed argument why dismissal with prejudice would be appropriate.

## II. Eighth Amendment

Plaintiff alleges that defendants Hutchinson and Ingraham violated his Eighth Amendment rights under the Cruel and Unusual Punishments Clause. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The

Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted). Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims which sound in state tort law. *See Alspaugh v. McConnell*, 643 F.3d 162,169 (6th Cir. 2011); *Westlake*, 537 F.2d 860 n. 5; *see also Reed v. Speck*, No. 12-5172, 2012 WL 6176846, at * 3 (6th Cir. Dec. 11, 2012) ("The subjective component is intended 'to prevent the constitutionalization of medical malpractice claims.'") (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d at 550)).

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs against defendants Hutchinson and Ingraham. The record is devoid of evidence of any deficiency in plaintiff's medical care. Plaintiff's disagreement with the treatment provided falls far short of supporting an Eighth Amendment claim. *See e.g.*, *Kosloski v. Dunlap*, 347 F. App'x 177, 180 (6th Cir. 2009); *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006).

**Recommended Disposition**

For the foregoing reasons, I recommend that defendant Stieve's motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a) (docket # 12) be granted and that all plaintiff's claims against Dr. Stieve be dismissed without prejudice. I further recommend that plaintiff's motion for summary judgment (docket # 39) be denied. I further recommend that the motion for summary judgment by defendants Hutchinson and Ingraham (docket # 46) be granted and that judgment be entered in their favor on all plaintiff's claims against them.


Dated:  March 14, 2013            /s/  Joseph G. Scoville
                                  United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).